Dryden *v.* Grand Trunk Railway of Canada.

---

## JOHN DRYDEN *vs.* GRAND TRUNK RAILWAY OF CANADA.

*Railroad tickets—good six years in this State.*

The Grand Trunk Railway of Canada is a foreign corporation, and its charter creates no obligations and imposes no restraints upon the legislative authority of this State.

Under the lease of the At. & St. L. Railroad Company, the Grand Trunk-Railway Company hold the property therein demised, subject not only to all the laws then in force, but to such also as the legislature might thereafter enact.

Special Laws of 1853, approved March 29, which authorized the At. & St. L. Railroad Company to lease its road to the Grand Trunk Railway Company, provided that nothing therein contained should in any manner limit or circumscribe any power of the legislature of this State, to enact laws affecting the rights, privileges, or duties of the latter company.

Chapter 223* of Pub. Laws of 1871 is obligatory upon the Grand Trunk Railway Company.

---

*See opinion.

Dryden *v.* Grand Trunk Railway of Canada.

ON FACTS AGREED.

WRIT dated March 16, 1871. Plea, general issue and joinder.

On the 12th day of March, 1871, the plaintiff purchased of the defendants at their ticket office at their station in Portland a first-class passenger ticket from Portland to Island Pond, in Vermont, of which ticket the following is a copy:

> GRAND TRUNK RAILWAY.
>
> ————
>
> **GOOD FOR THIS DAY ONLY.**
>
> *PORTLAND TO ISLAND POND.*
>
> ————
>
> FIRST CLASS.
>
> Мсн. 12, 71.      6141.

Paying therefor the regular and established price for tickets from Portland to that place, and the plaintiff could have traveled the whole distance from Portland to Island Pond on the day he purchased his ticket.

Leaving Portland at 1 P. M. on March 12th, the plaintiff proceeded, by virtue of his aforesaid ticket, in the cars of defendant corporation, on his way towards Island Pond until he arrived about 3 P. M. at Paris, where he left the train. He remained at Paris until the afternoon of March 15th, when, upon the arrival at that place of the train of that day from Portland for Island Pond, he entered the car and resumed his journey toward Island Pond.

Soon after leaving Paris, the conductor of the train (being a servant and agent of the defendant corporation for that purpose) called upon plaintiff for his fare ; and in answer to such call plaintiff stated that he was then going from Paris to Island Pond, and exhibited and offered to said conductor the aforesaid passenger ticket dated March 12th, which the conductor refused to receive in settlement of the fare, informing the plaintiff that by its terms and rules of the road it was not good for that day, and again demanded of the plaintiff payment of his fare at the established rate from Paris to Island Pond. The plaintiff refused to pay the same in any other manner than by his ticket aforesaid, and in conse-

quence thereof, the conductor, upon the arrival of the train at the next station (West Paris) forcibly ejected plaintiff from the train, using no more force than was reasonably necessary for that purpose.

By the rules of the defendant corporation regulating the transportation of passengers, tickets are good only for the day they are issued and dated, in the absence of any agreement otherwise, marked on the ticket.

If the plaintiff was entitled to recover, judgment to be entered in his favor, and his damages to be assessed by the court.

*N. Webb*, for the plaintiff.

*J. & E. M. Rand*, for the defendants.

The plaintiff had no right to ride on the 15th from Paris to Island Pond, upon a ticket for the 12th, from Portland to Island Pond.

Ticket was a contract (and a special contract) between plaintiff and defendants, by which defendants agreed to carry plaintiff from Portland to Island Pond on March 12th, for a specified sum paid.

The right and power of railroad companies to make special contracts for transportation of passengers, would seem to be unquestionable, both upon principles of law and of common sense.

Judicial decisions upon this matter, recognizing the right of railroad companies to issue tickets, and to declare them upon their face good only for a limited period, and void thereafter; to require passengers, purchasing tickets for any given place, to go through on the same train, or forfeit the unused part of the ticket; to discriminate between way fares and through fares. *Cheney* v. *B. & M. R. Co.*, 11 Met. 121; *B. & L. R. Co.* v. *Proctor*, 1 Allen, 267; 1 Redfield on Railways (3 ed.), 99, 100, etc.; *Beebe* v. *Ayres*, 28 Barb. 275.

Upon the principles laid down in these cases, plaintiff cannot recover; upon his refusal to pay the fare on the 15th, the conductor was justified in removing him from cars.

The legislature cannot apply Pub. Laws, 1871, c. 223, to de-

fendant corporation; defendants are not in any respect bound to regard it.

Defendants are not a corporation created by this State; in this State they are only lessees of the At. & St. Lawrence R. Co., and as such lessees operate said road under the same powers and privileges, and subject to the same liabilities conferred or imposed upon the At. & St. Lawrence R. Co.

The At. & St. Lawrence Co. was incorporated by legislature of Maine, Feb, 10, 1845. Its charter, drawn with special reference to the then existing laws of the State, among other powers and privileges, expressly authorized the corporation to make and establish all necessary by-laws and regulations, consistent with the laws of the State, for managing its property and affairs. And the directors were expressly authorized to exercise all the powers granted to the corporation for the transportation of persons and property upon said road, and all such power and authority for the management of its affairs, as should be necessary and proper to carry into effect the objects of the grant. A toll was granted and established, for the sole benefit of the corporation, upon all passengers and property transported upon said road, at such rates as should be established by the directors. And the transportation of persons and property was in every respect made subject to such regulations as the directors should from time to time prescribe.

These provisions of the charter would seem of themselves, necessarily, to have given to the corporation the sole and exclusive management of its affairs, and particularly of the transportation of persons and property, free from any further legislative regulation. But, as if to place the matter beyond all question, section 18 of the charter declared what power and control was reserved by the legislature; what the legislature might do, and what it should not do; giving it the power to inquire into the manner in which the corporation had used its powers and privileges, to correct any abuses, and to compel it to observe its liabilities and duties; but it was expressly prohibited to 'impose any other or further duties, liabilities, or obligations,' or to 'revoke, annul, alter, limit, or re-

strain the charter,' without the consent of the corporation, except by due process of law.

.The rights and powers before mentioned were thus secured to the company; and no subsequent statute could or can revoke, alter, or impair them, or impose any new duties, liabilities, or obligations without the consent of the company, or by process of law. The right was secured to the directors to regulate, among other things, the transportation of passengers according to their own judgment, without any interference of the legislature, unless the company should in some way abuse the privilege. And whether their privilege had been abused would be determined only 'by due process of law.'

It cannot be pretended that the power and privilege of regulating the transportation of passengers has been abused in any manner. Their rules are adapted and intended to secure the safety of the traveling public, and at the same time protect the interests of the corporation. 1 Redfield on Railways (3d ed.), 88, etc.

By the statute of Feb. 25, 1871, entitled 'An act regulating railroad corporations,' the legislature attempts to modify and change the regulations of the corporation touching the transportation of passengers, by giving to ticket-holders rights and privileges inconsistent with said regulations.

This statute is clearly inconsistent with the power conferred upon the directors in the sixth section of their charter.

The power of the legislature to impose new burdens or restrictions upon existing corporations has, on several occasions, been under judicial consideration. 2 Redfield on Railways (3d ed.), 428, c. 32, § 2, and cases there cited.

In this State, the subject was fully considered in *State* v. *Noyes,* 47 Maine, 189. The legislature passed an act regulating the transportation of persons and property over the Penobscot & Kennebec railroad. Sections 4, 5, 6, and 17 of the P. & K. charter are precisely like sections 4, 5, 6, and 18 of the A. & St. L. charter. The act of the legislature was held to be in violation of the rights secured to the company in their charter, and not binding upon the corporation.

That case involved the same questions and principles as the one at bar, and would seem to be conclusive.

The power and right of the legislature under R. S., c. 46, § 17, without any reservation of such power in the charter, to amend or alter acts of incorporation, is restricted to cases where charter contains no express limitation.

But section 18 of A. & St. L. charter, contains such express limitation.

A statute intended and adapted solely to secure the safety of passengers, and based solely upon the principle of public safety, might be binding upon the A. & St. L. Company and their lessees. But such an act as that of Feb. 25, 1871, can hardly be pretended to fall within that class; it is intended and adapted solely to promote what is called the public convenience; and we submit that is beyond the power either expressly or impliedly reserved by the legislature in the A. & St. L. charter. *State* v. *Noyes*, above cited; 2 Redfield on Railways, as above.

If such a statute can be enforced upon the A. & St. L. Co. and its lessees, it is difficult to perceive any limitation to the power of the legislature upon this subject.

WALTON, J.   The doctrine that the charter of a private corporation creates a contract between the corporators and the government, which cannot be impaired by subsequent legislation, can never be invoked by foreign corporations. Their charters may create contracts between them and the governments by which they are granted, but not between them and other governments. No State or government can create a corporation and confer upon it the right to do business in another State, or within another jurisdiction, in violation of the local law. Not only their manner of doing business, but the kinds of business which they may do, are entirely and unrestrictedly under the control of the local legislative authority. *Bank of Augusta* v. *Earle*, 13 Peters, 586; *Paul* v. *Virginia*, 8 Wallace, 168.

The Grand Trunk Railway Company of Canada is a foreign cor-

Dryden v. Grand Trunk Railway of Canada.

poration. Its charter imposes no restrictions upon the legislative authority of this State. This the learned counsel for the company will probably concede.

But it is claimed that as lessees of the Atlantic & St. Lawrence Railroad Company, they 'operate said road under the same powers and privileges, and subject to the same liabilities,' as those con ferrred or imposed upon that road.

Their lease undoubtedly secures to them many of the privileges, and subjects them to many of the liabilities of that company ; but not to all of them. For an abuse of their charter they are amenable only to their own government,—they cannot be proceeded against for the purpose of having it annulled in the courts of this State ; nor can the legislature of this State amend, alter, or revoke it.

Nor can they claim the same immunity against hostile legislation. Their charter is the act of a foreign government. It creates no obligations, imposes no restraints upon the legislative authority of this State.

Nor does their lease. For without stopping to consider whether it would be competent for two corporations, by an agreement between themselves, to deprive the State of its legislative authority over one of them, it is enough to know that in this case no attempt of the kind has been made. On the contrary, the lease declares in express terms that the lessees are to have and to hold the property, and the rights and privileges, thereby demised, subject not only to all the laws then in force, but to such also as the legislature might thereafter enact. And the act granting the Atlantic & St. Lawrence company permission to lease its road, is equally explicit. It declares that nothing therein contained shall in any manner limit or circumscribe the power of the legislature to enact such laws affecting the rights, privileges, or duties of said company, as it might deem proper.

We fail to discover any ground on which the Grand Trunk Railway Company of Canada can claim the right to do business in this State exempt from legislative control. Certainly not by virtue of

their charter, for that is the act of a foreign government, and has no force in this State. Not by virtue of their lease, nor by virtue of the act granting the Atlantic & St. Lawrence Railroad Company permission to make it, for they both expressly negative any such right. In short, we fail to discover any ground on which such a claim can be supported.

Our conclusion, therefore, is, that the act of 1871, c. 223, which declares that no railroad company shall limit the right of a ticket-holder to any given train: but that such ticket-holder shall have the right to travel on any train, whether regular or express train, and to stop at any of the stations at which such train stops, and that such ticket shall be good for a passage as above for six years from the day it is first used, is obligatory upon the defendants; and that it is their duty, when doing business in this State, to conform to it.

The plaintiff was wrongfully ejected from the defendants' cars, and, upon the agreed statement of facts, is entitled to recover.

*Judgment for plaintiff.*

*Damages,* $200.

APPLETON, C. J.; DICKERSON, BARROWS, and DANFORTH, JJ., concurred.